UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RONALDA MESON,                                    X

    Plaintiff,

v.                                                                Civil Action No. _____ DKC 04 CV 3806

GATX TECHNOLOGY SERVICES                          Plaintiff demands trial by jury.
CORPORATION, and
GATX FINANCIAL CORPORATION,

    Defendants.                                X

## COMPLAINT

1. Plaintiff is a citizen of Virginia.

2. Defendant GATX Technology Services Corporation ("GTS") is a Delaware corporation with its principal place of business in Florida. GTS is qualified to do business in Maryland.

3. Defendant GATX Financial Corporation ("GF") is a Delaware corporation with its principal place of business in California. GF is the parent corporation of GTS. GF is qualified to do business in Maryland.

4. This court has subject matter jurisdiction under 28 U.S.C. § 1332 in that the parties are citizens of diverse states and the amount in controversy exceeds $75,000, exclusive of interest and costs. The court has *in personam* jurisdiction over defendants in that they are both doing business in Maryland and have activities within both divisions in this district. Venue is good in this district under 28 U.S.C. § 1391(a)(1) in that both defendants are residents of this district within the meaning of 28 U.S.C. § 1391(c).

1

5. Until June 30, 2004, GTS was in the information technology ("IT") leasing business. As of that date, GTS ceased doing business, and, upon information and belief, is in the process of distributing its assets to GF without making adequate provision for paying GTS' debts to GTS' employees, including plaintiff. For that reason, GF is liable for GTS' debts to the extent GTS is unable to pay them due to distribution of assets to GF, and GF is sued solely in its capacity as owner of GTS and distributee of its assets in the winding down of GTS's business.

6. Plaintiff has been employed as a sales representative and sales manager in the IT leasing business and was employed by a company from whom GTS bought a leasing portfolio prior to 2001.

7. In 2001, plaintiff and GTS entered into an employment contract ("the Employment Contract"). Under the Employment Contract, plaintiff had 2 responsibilities: to serve as a regional sales manager supervising sales representatives; and to serve as a sales representative to certain designated accounts.

8. Under the Employment Contract, plaintiff was to receive compensation in three categories. First, plaintiff was to receive a base salary. Second, plaintiff was to receive certain agreed sums as a manager based on the performance of the sales representatives she managed (hereafter, "manager compensation"). Third, plaintiff was to receive commissions under GTS' annual commission plans for her work as a sales representative on assigned accounts (hereafter, "sales representative compensation"). For this third category, commissions were in two parts: a lease origination commission given at the outset of any lease and a "gross margin" commission coming later in the lease process, when GTS earned a margin or profit on the lease from either renewal or remarketing of the leased assets or fee income (hereafter, "margin compensation").

2

Included in the fee income category would be instances when GTS sold its equity interest in the leased equipment. Plaintiff was also promised stock grants.

9. On or about April 15, 2004, GTS and/or GF entered into an agreement with CIT Group, Inc. and/or an affiliate of it (collectively, "CIT") to sell CIT, *inter alia*, GTS' equity interest in its portfolio of leased equipment, including the portion of the portfolio covered by plaintiff's activities as sales representative. The sale was a part of GTS' sale of its IT Leasing business to CIT, and the effect of the sale was to entitle plaintiff to margin compensation.

10. Thereafter, GF's parent, GATX Corporation ("GATX"), announced to GTS' employees, including plaintiff, that GTS would cease business operations on the closing of the CIT sale, and, on May 26, 2004, GATX issued a WARN Act (29 U.S.C. § 2101 *et seq*) notice to plaintiff.

11. GTS advised employees to apply to CIT for employment.

12. Plaintiff contacted CIT seeking continued employment.

13. CIT refused to consider plaintiff for employment.

14. GTS offered severance to its employees under a formula of 30 weeks of base salary, an amount equal to $72,115.38 for plaintiff.

15. On June 30, 2004, GTS' employment of plaintiff ceased.

16. GTS has refused to pay plaintiff the amount of compensation due to plaintiff for work performed prior to June 30, 2004, specifically short-paying plaintiff in her manager compensation in the amount of approximately $269,000 for the current year, and, taking into account the three year residuals of manager compensation, approximately $700,000, discounted, and in her sales representative compensation in the amount of approximately $520,000.

17. Plaintiff made demand on GTS for compensation and GTS has refused to pay.

18. Following plaintiff's demand, GTS has refused to pay plaintiff the severance to which plaintiff is entitled under GTS' severance policy unless plaintiff signed a release waiving her right to the unpaid compensation. Plaintiff refused to release her rights.

19. At all times up to June 30, 2004, plaintiff performed all aspects of her duties as a manager and sales representative beyond the requirements of her job and contract.

## CLAIMS

### I. Breach of Contract

20. GTS has breached the Employment Contract by underpaying plaintiff, and is, as a result, liable for the underpaid compensation set forth in ¶ 16.

### II. Violation of Wages & Hour Law

21. GTS has failed to pay plaintiff wages due, i.e., manager compensation and sales representative compensation, for work that plaintiff performed prior to termination of employment in violation of Maryland Labor and Employment Code § 3-505 and 3-507.1.

22. As a result of the foregoing, GTS is liable for treble damages and plaintiff's reasonable costs and attorneys' fees of this suit, the amounts to be trebled being set forth in ¶ 16, supra.

### III. Refusal to Pay Severance

23. GTS' refusal to pay severance without a waiver of rights is a violation of public policy in that it requires an employee to authorize GTS to violate the statutory compensation rights of the employee in order to receive a payment generally available to all employees.

4

24.     As a result of the foregoing, GTS is liable to plaintiff for severance in the amount of $72,115.38.

IV.     Violation of WARN Act

25.     Plaintiff is entitled to WARN Act payments by virtue of GATX's untimely notice in an amount equal to 60 days of her compensation. This amount is to be calculated based on the total compensation due and can be determined only after assessment of damages hereunder. Based on plaintiff's paid earnings through the termination date, the minimum amount of this payment due is approximately $150,000.

26.     Having issued a WARN Act notice, GTS and GATX are estopped to deny WARN Act compensation is due, because plaintiff *relied* on the WARN Act notice to continue working for the benefit of GTS until June 30, 2004.

V.      Breach of Contract

27.     During the course of plaintiff's employment, GTS, as a result of the work of other persons, was in a position where it would lose in excess of $10,600,000 due to problems in its existing lease portfolio on accounts not managed by plaintiff.

28.     It was not in plaintiff's job responsibilities to work on the foregoing problems.

29.     GTS management requested plaintiff to try and avoid the potential loss and promised that GTS would compensate plaintiff if she prevented the loss.

30.     Plaintiff worked with the lessees on the problem accounts to avoid the loss and produced for GTS a profit on the transactions.

31. GTS has refused and failed to pay plaintiff any amount for saving GTS a loss and producing a profit on the problem accounts.

32. As a result of the foregoing, GTS is in breach of contract and has breached the implied covenant of fair dealing and good faith and is liable to plaintiff for $1,590,000, based on a 15% fee for loss mitigation.

VI.   Unjust Enrichment

33. As a result of the foregoing, GTS has been unjustly enriched; GTS was aware plaintiff expected to be fully paid for the benefit conferred and has failed to pay her.

34. Defendant is liable to plaintiff for unjust enrichment in the amount of $1,590,000.

VII.  Promissory Estoppel

35. As a result of the foregoing, GTS is liable to plaintiff for promissory estoppel in that it promised payment to plaintiff to solve a major problem for it and avoid a loss and plaintiff relied, to her detriment, putting in great effort above and beyond her regular work and achieved success.

36. As a result, defendant is liable to plaintiff for $1,590,000.

WHEREFORE, plaintiff requests the following relief:

A.   On Claim I, damages set forth in ¶ 16, according to the proof.

B.   On Claim II, trebling of unpaid compensation set forth in ¶ 16, according to the proof, plus reasonable attorneys' fees of this suit.

C.   On Claim III, $72,115.38.

D.   On Claim IV, 60 days of compensation prorated from the annual rate to be determined by the court.

E.   On Claim V, damages of $1,590,000.

F.   On Claim VI, the same amount as Claim V.

G.   On Claim VII, the same amount as Claim V.

H.   Prejudgment interest from June 30, 2004.

I.   Reasonable attorneys' fees and costs of suit.

J.   Such other relief as the court deems just and proper.

Respectfully submitted,

_____
Michael E. Geltner, Esq.
MD Fed Bar No. 10675
Geltner & Associates, P.C.
10 E Street, S.E.
Washington, DC 20003
(202) 547-1136

_____
James McCollum, Esq.
James McCollum & Associates
P.O. Box 1717
7309 Baltimore Avenue, Suite 117
College Park, MD 20740
(301) 864-6070

Attorneys for Plaintiff